OPINION
Plaintiff-appellant, Brent Applegate, appeals a decision of the Brown County Court granting judgment in favor of defendant-appellee, Ricky L. Shepherd.
By written agreement dated June 8, 1996, Applegate agreed to buy a Bobcat from Shepherd for $5,500. The agreement called for eighteen payments of $300 and one final payment of $100. Applegate made monthly payments from July 1996 to August 1997, a total sum of $3,900 (leaving a balance of $1,600). In June and July 1997, Applegate allowed Shepherd to use the Bobcat at a rate of $10 an hour. Applegate contends that when he picked up the Bobcat on July 31, 1997, Shepherd had run up 47.6 hours on it. Applegate did not make any payments in September and October 1997. As a result, on November 6, 1997, Shepherd took possession of the Bobcat and kept it until March 9, 1998.[1]
On December 3, 1997, Applegate filed a small claims complaint in the trial court asking, inter alia, that Shepherd pay him $470 for use of the Bobcat in June and July 1997. On January 28, 1998, Shepherd filed a counterclaim for the $1,600 still owed on the Bobcat. During a hearing held on January 9, 1998 and continued on July 1, 1998, Applegate testified the parties had agreed to credit Shepherd's use of the Bobcat towards Applegate's monthly payments. Applegate testified that had Shepherd paid the $470 for his use of the Bobcat, Applegate would not have been in arrears. Shepherd testified he used the Bobcat eight hours in June and July 1997. Shepherd testified the parties only agreed on him paying $10 an hour for the use of the Bobcat. Shepherd believed he might have said that if Applegate paid the $1,600 balance, Shepherd would credit the $470 towards the balance.
By entry filed March 9, 1998, the trial court granted judgment in favor of Shepherd in the amount of $600 plus ten percent interest from the date of the entry, or "[i]n the alternative, if [Shepherd] returns Bobcat to [Applegate], [Applegate] shall pay $1600 plus 10% interest from 3/9/98 and costs." Pursuant to the entry, Applegate paid the $1,600 balance to Shepherd who returned the Bobcat in March 1998. Applegate timely filed this appeal and raises as his sole assignment of error that "the trial court erred in ruling [Shepherd] was entitled to repossess the Bobcat, the collateral."
Applegate first argues that in light of the $476 owed by Shepherd for his use of the Bobcat in June and July 1997, Applegate was not in default of the parties' written agreement. Applegate argues that the $476 should be applied to reduce his obligation. Applegate also argues that Shepherd's additional use of the Bobcat (242.9 hours) between Shepherd's repossession of the Bobcat on November 6, 1997 and the March 9, 1998 hearing should also be applied to reduce Applegate's obligation.[2]
Applegate further argues that he should be compensated for the $600 damage to the Bobcat that occurred during that same period of time. Applegate cites R.C. 1309.18(B) (3)[3] to support his contention that Shepherd's original and additional use of the Bobcat should be applied to reduce Applegate's obligation.
After thoroughly reviewing the record, we find that the trial court did not err in granting judgment in favor of Shepherd. With regard to Applegate's request that he be awarded $476 for Shepherd's original use of the Bobcat, we note that Applegate presented absolutely no evidence to support his allegation that Shepherd used the Bobcat 47.6 hours in June and July 1997. Shepherd testified he used the Bobcat eight hours during that period. By contrast, it is undisputed that Applegate did not make any payments in September and October 1997. When Shepherd took possession of the Bobcat in November 1997, Applegate was $600 in arrears on payments and the balance still owed on the Bobcat was $1,600. It is well-established that a trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and use these observations in weighing the credibility of the witnesses. See In re Jane Doe 1 (1991), 57 Ohio St.3d 135.
With regard to Applegate's argument that his obligation should be reduced by Shepherd's additional use of the Bobcat and that he should be compensated for the damage suffered by the Bobcat, this argument concerns issues that were neither raised nor addressed in the trial court prior to its March 9, 1998 entry. While such issues were apparently before the trial court on Applegate's Civ.R. 60(B) motion, Applegate is not appealing the denial of that motion. It is rudimentary that questions neither raised in nor passed upon by the trial court will not be ruled upon by this court. Moats v. Metropolitan Bank of Lima (1974),40 Ohio St.2d 47, 49-50. As a result, this court will not rule on those issues. Id.
Applegate's sole assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and VALEN, J., concur.
[1] The parties' agreement provides that "[i]f payment is in rears [sic] of 60 days from due date, SECURED PARTY can demand full payment or secure fore mentioned [sic] property."
[2] In his brief, Applegate asserts that when he received the Bobcat back in March 1998, he discovered that "[Shepherd] had used the Bobcat for an additional 242.9 hours. [Applegate] also discovered that [Shepherd] damaged the bucket of the Bobcat, costing [Applegate] $600." The record shows that on August 17, 1998, Applegate filed a motion to stay his appeal before this court on the ground he had filed a Civ.R. 60(B) motion in the trial court based on the newly discovered evidence of Shepherd's additional use of the Bobcat. By entry filed September 4, 1998, this court remanded the case to the trial court for it to rule on Applegate's Civ.R. 60(B) motion. While Applegate states in his brief that the trial court denied his motion on September 30, 1998, the record before this court is devoid of such decision. In any event, Applegate is not appealing the denial of his motion.
[3] R.C. 1309.18(B) (3) provides that "[u]nless otherwise agreed, when collateral is in the secured party's possession[,] the secured party may hold as additional security any increase or profits, except money, received from the collateral, but money so received, unless remitted to the debtor, shall be applied in reduction of the secured obligation."